# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHERYL KOCHERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-18-787-G |
| ) | |
| LINDSAY MUNICIPAL HOSPITAL ) | |
| AUTHORITY, a/k/a LINDSAY ) | |
| MUNICIPAL HOSPITAL, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Now before the Court are the Motion to Dismiss of Defendant Kamil Nemri, MD (Doc. No. 41) and the Partial Motion to Dismiss of Defendant Lindsay Municipal Hospital Authority (Doc. No. 43). Based on the case record, the parties' arguments, and the governing law, the Motions are granted in part, and denied in part, as set forth below.

### SUMMARY OF THE PLEADINGS

From January 2005 to March 2016, Plaintiff Sheryl Kochert was employed as a part-time "Flex Nurse" by the Lindsay Municipal Hospital Authority (the "Hospital") in Lindsay, Oklahoma. Am. Compl. (Doc. No. 40) ¶¶ 14-15, 25-26. During this time, Plaintiff's salary remained stagnant, and she was passed up for promotions and other advancement opportunities afforded to younger, less experienced nurses who were paid the same or a higher wage. *Id.* ¶¶ 25-26. Specifically, Plaintiff alleges that she was denied the opportunity to apply for a vacant Director of Nursing ("DON") position and that, without posting or otherwise advertising the position, the Hospital selected a young nurse to fill the vacancy "over older, more experienced nurses." *Id.* ¶ 63; *see also id.* ¶¶ 17, 138. Plaintiff

further alleges that, at some point during her tenure, she became "targeted for the creation of a hostile work environment" by a group of younger coworkers who "routinely met during and after work to discuss employees whom they did not like and wanted to get out of the hospital." *Id.* ¶ 61.

Beginning in 2014, Plaintiff "made multiple complaints to her superiors about her treatment at the Hospital and asserted her rights under Title VII, the Age Discrimination and Employment Act, and the Oklahoma Anti-Discrimination Act." *Id.* ¶ 27. Plaintiff additionally complained about the Hospital's "failure to follow state and federal guidelines" and voiced her concern that substandard conditions at the Hospital, such as "insufficient staffing" and "outdated or malfunctioning equipment," created "risks to patients and staff" and impaired Plaintiff's ability to "perform her job in accordance with state and federal laws."[1] *Id.* ¶¶ 20-21. When no corrective action was taken, Plaintiff escalated her complaints to the Hospital's Board of Directors and to the City Council for the City of Lindsay. *Id.* ¶¶ 28-29.

On or about February 19, 2015, Plaintiff met with the Hospital's Human Resources Manager, who "advised Plaintiff that, if she continued to pursue the issues she complained of, she would be terminated or forced to resign." *Id.* ¶ 30. Plaintiff on April 14, 2015, contacted the Equal Employment Opportunity Commission ("EEOC") to report the ongoing discriminatory conduct occurring at the Hospital. *Id.* ¶ 31.

---

[1] Plaintiff later filed complaints against two nurses for "failure to provide proper patient care, failure to follow universal precautions, and violation of Hospital policy." Am. Compl. ¶ 52.

Plaintiff also lodged complaints against Dr. Kamil Nemri. In September and October of 2015, Plaintiff reported Dr. Nemri to the Hospital's complaint division for giving orders that would have "violate[d] standards of safety for patient care and discrimination" if followed and for rendering substandard medical treatment to a patient who ultimately died in the Hospital's care. *Id.* ¶¶ 34, 45, 48; *see also id.* ¶ 139. In October 2015, Plaintiff filed similar complaints against Dr. Nemri with the Oklahoma State Department of Health and the Oklahoma Board of Medical Licensure. *Id.* ¶ 48, 50. In response, Dr. Nemri "threatened Plaintiff's job . . . and offered a reward to the employee who divulged who made complaints about him." *Id.* ¶ 51; *see also id.* ¶ 135. He also "advised Plaintiff to get over the past and move on." *Id.* ¶ 136.

Shortly after making her complaints against the Hospital and Dr. Nemri, Plaintiff experienced "a noticeable reduction in her schedule." *Id.* ¶ 32. "Between October 2015 and March 2016, Plaintiff's hours were limited to less than the minimum for a Flex Nurse, her shifts were cancelled, and her hours were given to younger nurses." *Id.* ¶ 39. Moreover, Plaintiff was prevented from renewing her Advanced Cardiovascular Life Support ("ACLS") certification, which she "is required to have" in order to work in the Emergency Room. *Id.* ¶¶ 40-41. Plaintiff alleges "[o]n information and belief" that Dr. Nemri, alone or in combination with others, "actively interfered with and prevented [her] from obtaining the ACLS re-certification." *Id.* ¶ 42; *see also id.* ¶ 137.

After refusing to drop her complaints, Plaintiff was terminated from her employment with the Hospital on March 11, 2016. *Id.* ¶ 59. She filed this action on June 21, 2017.[2] *Id.* ¶¶ 11-12.

Plaintiff's sole claim against Dr. Nemri is for tortious interference with her employment relationship with the Hospital.[3] Plaintiff alleges that Dr. Nemri interfered with her employment relationship in the following ways:

- by "creat[ing] a hostile work environment for Plaintiff," Am. Compl. ¶ 134;

- by "threaten[ing] Plaintiff's job after she complained about him," *id.* ¶ 135;

- by "offer[ing] a reward to [] anyone who divulged the name of the person who made the complaints about him," *id.* ¶ 135;

- by "advis[ing] Plaintiff to get over the past and move on when she complained about discriminatory treatment by Dr. Nemri," *id.* ¶ 136;

- by "actively interfer[ing] with and prevent[ing] Plaintiff from obtaining her ACLS re-certification," *id.* ¶ 137;

- by "participat[ing] in the decision to promote [a younger nurse] to DON, a position that was never posted or advertised for Plaintiff to apply for," *id.* ¶ 138; and

---

[2] Plaintiff initially filed this action in the District Court of Cleveland County, Oklahoma. *See* Pet. (Doc. No. 1-2). Defendants removed the action to this Court on August 16, 2018. *See* Notice of Removal (Doc. No. 1).

[3] Plaintiff's use of the collective term "Defendants" throughout her Amended Complaint gave Dr. Nemri the false impression that Plaintiff was asserting seven causes of action against him and the Hospital the false impression that Plaintiff's seventh cause of action was asserted against it. Such collective pleading is inconsistent with the mandates of Federal Rule of Civil Procedure 8(a), as it impedes a defendant's ability to determine "what particular . . . acts [he or she] [is] alleged to have committed." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Plaintiff's subsequent clarification that six of her seven claims "are not brought against . . . Dr. Nemri," and the seventh is not brought against the Hospital, moots portions of those Defendants' Motions. *See* Pl.'s Nemri Resp. (Doc. No. 51) at 17-18 (ECF pagination); Pl.'s Hosp. Resp. (Doc. No. 50) at 21.

4

- by "[giving] orders during a mandatory nurse meeting which, if followed, would violate standards of safety for patient care and discrimination," thereby "jeopardiz[ing] Plaintiff's nursing license," *id.* ¶ 139.

Plaintiff alleges that, as a result of the foregoing conduct, she was: (1) "overlooked for promotions for which she was otherwise qualified"; (2) "placed on a punitive work schedule," resulting in "lost time from work"; and (3) "eventually discharged from her employment." *Id.* ¶ 140.[4]

Plaintiff asserts six claims against the Hospital. Specifically, Plaintiff claims that the Hospital: (1) subjected her to unlawful age discrimination; (2) engaged in unlawful retaliation; (3) violated the Oklahoma Anti-Discrimination Act, Okla. Stat. tit. 25, § 1350; (4) is liable under *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989), for terminating Plaintiff in contravention of public policy; (5) breached the terms of a settlement agreement she had entered into with the Hospital; and (6) violated Plaintiff's right to free exercise of speech under the First Amendment of the U.S. Constitution and under the Oklahoma Constitution. *See id.* ¶¶ 64-130.

---

[4] Plaintiff further claims that, as a result of Dr. Nemri's conduct, she "was forced to endure a hostile work environment." Am. Compl. ¶ 140. Even assuming Dr. Nemri's conduct created a hostile work environment for Plaintiff, this is not the sort of injury for which a claim of tortious interference supplies relief. *See Davis v. Bd. of Regents for Okla. State Univ.*, 25 P.3d 308, 311 (Okla. Civ. App. 2001) (explaining that "actionable interference," for purposes of a tortious-interference claim, requires "causally-related *economic* damage" such as "a decrease in salary" or a "deni[al] [of] promotions, raises, grants, or the like" (emphasis added)). To the extent Plaintiff attempts to assert a federal hostile-work-environment claim against Dr. Nemri, such a claim fails as a matter of law. *See Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) ("The relief granted under Title VII is against the *employer*, not individual employees whose actions would constitute a violation of the Act.").

5

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) prescribes that a defendant may seek dismissal when the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim that is plausible on its face." (internal quotation marks omitted)). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

ANALYSIS

*A. Dr. Nemri's Motion to Dismiss*

Dr. Nemri challenges various aspects of Plaintiff's claim that Dr. Nemri tortiously interfered with her employment relationship with the Hospital. To state a viable claim for tortious interference with a business relationship under Oklahoma law, Plaintiff must plead facts supporting three elements: "1) interference with a business or contractual right;

6

2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference." *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1165 (Okla. 2009).

Dr. Nemri argues that Plaintiff's contention that Nemri "created a hostile work environment" is not accompanied by sufficient factual allegations to state a claim for tortious interference. *See* Nemri Mot. (Doc. No. 41) at 17 (citing Am. Compl. ¶ 134). The Court agrees. This contention is but a "naked assertion devoid of further factual enhancement," and as such cannot support a facially plausible claim for tortious interference under the federal pleading standard. *Iqbal*, 556 U.S. at 678 (alteration, citation, and internal quotation marks omitted); *see* Am. Compl. ¶ 134.

Further, Dr. Nemri argues that Plaintiff's allegations that Nemri "threatened Plaintiff's job," "offered a reward to [] anyone who divulged the name of the person who made the complaints about him," "interfered with and prevented Plaintiff from obtaining her ACLS re-certification," and "gave orders" at a September 2015 meeting that, when followed by Plaintiff, "jeopardized Plaintiff's nursing license," are not accompanied by factual allegations sufficient to establish they were the proximate cause of her cited injury. Nemri Mot. at 17-18 (citing Am. Compl. ¶¶ 135, 137, 139). The Court agrees that Plaintiff's allegations are inadequate to bridge the gap between the complained-of conduct and the complained-of injury. *See Austl. Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1237 (10th Cir. 2006) ("In order to recover on a tortious interference claim under Oklahoma law, a plaintiff must show 'that damage was proximately sustained as a result of the complained-of interference.'" (alteration and citation omitted)). For instance, while Plaintiff asserts

7

that her ACLS certification was "required" in order for her to work in the Emergency Room, she does not allege that the nonrenewal of her certification was a motivating factor in the Hospital's decisions to deny her a promotion, alter her work schedule, or terminate her employment. Am. Compl. ¶ 40. Nor does Plaintiff plead facts demonstrating a causal relationship between Dr. Nemri's alleged threats, orders, and/or solicitation of information from third parties and any adverse employment action taken against Plaintiff.

Further, Dr. Nemri argues that Plaintiff's allegation that Nemri "advised Plaintiff to get over the past and move on" does not rise to the level of malicious and wrongful interference, as required to state a claim for tortious interference. Nemri Mot. at 18-19 (citing Am. Compl. ¶ 136). The Court agrees that Plaintiff has not supplied allegations that would, as to this particular comment, satisfy the second element of a tortious interference claim. *See Tuffy's*, 212 P.3d at 1165 (requiring "malicious and wrongful interference that is neither justified, privileged, nor excusable"); *see also Brock v. Thompson*, 948 P.2d 279, 293 n.59 (Okla. 1997) (explaining that "[t]here is no actionable claim if the *interference is lawful* or *does not encompass any unfair or unlawful act"*). In any event, Plaintiff has not alleged facts showing that this comment proximately caused the Hospital to deny her a promotion, alter her work schedule, or terminate her employment.

What remains is Plaintiff's claim that Dr. Nemri tortiously interfered with her employment relationship by "participat[ing] in the decision to promote [a younger nurse] to DON, a position that was never posted or advertised for Plaintiff to apply for." Am.

Compl. ¶ 138. The Court will permit this claim to proceed, as Dr. Nemri offers no argument in support of its dismissal.

*B. The Hospital's Motion to Dismiss*

The Hospital seeks dismissal of Plaintiff's claims for: (1) violation of the First Amendment to the U.S. Constitution; (2) violations of the Oklahoma Constitution; and (3) wrongful discharge in violation of *Burk v. K-Mart Corp.*, 770 P.2d 24. *See* Hosp. Mot. (Doc. No. 43) at 7-11, 12-15.

1. <u>First Amendment Claim</u>

Plaintiff's First Amendment claim, asserted under 42 U.S.C. § 1983, is predicated on allegations that the Hospital retaliated against her—e.g., by reducing her hours, denying her promotions and raises, and ultimately terminating her employment—for complaining about and reporting discrimination and other misconduct occurring within the Hospital. *See* Am. Compl. ¶¶ 75-91. To state a § 1983 claim, a plaintiff must allege that he or she has been deprived of a federal right by a person acting under the color of state law. *See* 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Hospital, a public trust chartered by the City of Lindsay, is a proper § 1983 defendant under the municipal liability rubric established in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). *See Beedle v. Wilson*, 422 F.3d 1059, 1065 (10th Cir. 2005) (collecting cases for the proposition that a hospital created as a public trust under Oklahoma law is a "state actor[] for 1983 purposes"). Under *Monell*, however, a municipality is not liable under § 1983 for injury "inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Rather, the plaintiff must show that the complained-of

9

injury is the direct result of an "official policy or custom" of the municipality. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

The Hospital argues, and the Court agrees, that Plaintiff has not alleged facts establishing the existence of an official policy or custom of retaliating against employees who report Hospital misconduct. *See* Hosp. Mot. at 9. "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider*, 717 F.3d at 770. Plaintiff does not attribute the alleged retaliation to a lack of training or supervision or to any formally promulgated policy or municipal decisionmaker. Nor does she identify any other employee who experienced retaliation as part of a settled custom or practice of the Hospital. At most, Plaintiff alleges that the Hospital engaged in a pattern of retaliating against *her*. This allegation, however, is insufficient to sustain a municipal liability claim because it does not reflect a practice that is "so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997); *see also Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) ("Proof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

Accordingly, Plaintiff fails to state a claim for violation of the First Amendment under the § 1983 municipal liability framework.

2. State Constitutional Claim

In her Amended Complaint, Plaintiff alleges that the Hospital violated her rights guaranteed by article 2, sections 3 and 22 of the Oklahoma Constitution. Am. Compl. ¶¶ 123-130. In response to the Hospital's Motion to Dismiss, however, Plaintiff expresses "agree[ment] [that] these claims should be dismissed without prejudice." Pl.'s Hosp. Resp. at 16.

In *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013), the Oklahoma Supreme Court recognized a private cause of action for excessive force in violation of the state constitution and held that such an action was not barred by the Oklahoma Governmental Tort Claims Act ("GTCA"), which at that time did not expressly extend immunity to tort claims based on alleged constitutional deprivations. *See id.* at 997-1004. Plaintiff's state constitutional claims appear to be asserted pursuant to *Bosh*.

In 2014, however, "the [Oklahoma] Legislature . . . responded to *Bosh* by amending the GTCA to specify that the State's immunity from suit extended even to torts arising from alleged deprivations of constitutional rights." *Barrios v. Haskell Cty. Pub. Facilities Auth.*, 432 P.3d 233, 238 (Okla. 2018). As noted in *Barrios*, the 2014 amendment effectively abrogated the *Bosh* claim by extending governmental immunity to so-called constitutional torts. *See id.* at 244.

As the Hospital observes, "[t]he practical effect of *Barrios* . . . is to bring any existing constitutional tort under the GTCA's ambit." Hosp. Mot. at 10. Therefore, to the extent there exists a common-law cause of action for violation of the state constitution—a

11

possibility that the *Barrios* court labeled "doubtful"[5]—such a claim is barred by sovereign immunity. *See* Okla. Stat. Ann. tit. 51, §§ 152.1(A) (providing immunity for the state and its "political subdivisions"), 152(11)(d) (defining "political subdivision" to include municipal hospitals and public trusts).

Based on the foregoing, the Court concludes that amendment would be futile and, on that basis, will order dismissal of Plaintiff's state constitutional claims with prejudice. *See Curley v. Perry,* 246 F.3d 1278, 1282 (10th Cir. 2001) (finding dismissal with prejudice appropriate where "no amendment could cure [the] defect").

3. *Burk* Claim

In *Burk v. K-Mart Corp.,* the Oklahoma Supreme Court recognized a tort cause of action in favor of an at-will employee who is terminated "for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." 770 P.2d at 29. To state a claim under *Burk*, a plaintiff must allege facts in support of three elements: "1) the plaintiff and defendant had a terminable-at-will employment relationship; 2) the employment relationship was terminated contrary to an identified compelling Oklahoma public policy that is clearly articulated in constitutional, statutory, or decisional law; and 3) there is no other adequate

---

[5] After holding that the plaintiffs' state constitutional claim was barred under the doctrine of sovereign immunity, the *Barrios* court went on to explain: "Even if not barred by sovereign immunity . . . it is doubtful that such claims would exist in the Oklahoma common law. Certainly nothing in the text of [the relevant Oklahoma constitutional provisions] creates a tort cause of action for money damages as a remedy to vindicate violations of those rights[;] nor do these plaintiffs point to any common law tradition of the State paying money damages [for the relevant injuries]." *Barrios*, 432 P.3d at 239.

remedy to protect the identified public policy." *Reynolds v. Advance Alarms, Inc.*, 232 P.3d 907, 909 (Okla. 2009).

The Hospital contends that Plaintiff cannot satisfy the third element of her *Burk* claim because, as an "unclassified" state employee under the Oklahoma Personnel Act ("OPA"), Okla. Stat. tit. 74, §§ 840-1.1 et seq., she has an adequate remedy under the Oklahoma Whistleblower Act ("OWA"). *See* Hosp. Mot. at 3-5. Plaintiff has responded that the OPA and the OWA are inapplicable in this situation because: (1) Plaintiff is not an "employee" within the meaning of the OPA; and (2) the Hospital is not an "agency" within the meaning of the OPA or the OWA. Pl.'s Hosp. Resp. at 13-14 (citing Okla. Stat. tit. 74, § 840-1.3).

The Hospital does not attempt to counter this argument in its reply brief. In fact, it concedes that "[Plaintiff's] analysis of the OPA and OWA's text appears to be accurate" and advances an entirely new argument—namely, that Plaintiff's *Burk* claim should be dismissed because it is duplicative of her First Amendment claim. Hospital Reply (Doc. No. 52) at 5-6. The Court declines to address this argument, however, under the well-settled rule that arguments raised for the first time in a reply brief are deemed waived. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Practices & Prod. Liab. Litig.*, No. 17-ML-2792-D, 2018 WL 3676971, at *6 n.6 (W.D. Okla. Aug. 2, 2018).

Accordingly, Plaintiff's *Burk* claim will be permitted to proceed.

CONCLUSION

For the reasons stated above, the Court rules as follows:

1. The Motion to Dismiss of Defendant Kamil Nemri, MD (Doc. No. 41) is GRANTED. Plaintiff's tortious-interference claim is dismissed without prejudice to the extent it is predicated on allegations that Dr. Nemri:

   a. created a hostile work environment for Plaintiff;

   b. threatened Plaintiff's job;

   c. offered a reward to anyone who divulged the name of the person who made complaints about him;

   d. advised Plaintiff to "get over the past and move on";

   e. prevented Plaintiff from obtaining her ACLS recertification; and

   f. gave orders which, if followed, would have violated standards of safety for patient care and discrimination.

Plaintiff may proceed with her claim that Dr. Nemri tortiously interfered with her employment relationship by participating in the decision to promote a younger nurse to the DON position.

2. The Partial Motion to Dismiss of Defendant Lindsay Municipal Hospital Authority (Doc. No. 43) is GRANTED IN PART:

   a. Plaintiff's First Amendment claim is dismissed without prejudice; and

   b. Plaintiff's state constitutional claims are dismissed with prejudice;

IT IS SO ORDERED this 19th day of September, 2019.

_____
CHARLES B. GOODWIN
United States District Judge